The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John Turner presiding. Thank you, Mr. Clerk. This is Brotze v. Carlinville et al. Case number 4200383, consolidated with 4200384. Counsel for Appellant, please state your name for the record. My name is David M. Foreman and I represent Illinois Alluvial Regional Water Company, Inc. Thank you. For the appellee? Jacob Smallhorn. I represent the Brotzes, Camille and Wayne Brotze. It's Brotze. Thank you for correcting me on that pronunciation. Mr. Foreman, you may proceed. Thank you, Your Honor. May it please the Court. Again, I represent Illinois Alluvial Regional Water Company, Inc. For the purpose of the argument, I refer to them as Alluvial. And the question presented today involves the Illinois Constitution, in particular Section 10A of Article 7 dealing with local governments and the right of a unit of local government or non-home rule unit to contract and otherwise associate with another unit of local government as well as a private corporation in any manner not prohibited by law. In this particular case, the purpose of the association being to construct a regional water treatment facility which would drill a well field, build a treatment plant and a distribution system to provide water to its constituent members on a mutual or a cooperative basis. And if the Court would turn to page 15 of my initial brief, I have a diagram which kind of outlines the formation and structure of the corporation and its membership. Alluvial is a not-for-profit corporation, but it is a particular type of not-for-profit corporation. It is a mutual company. It is a cooperative, meaning that its objective is to provide a service, namely the provision of potable water in bulk supply to its constituent members at the lowest possible cost. It is a partnership. It is a cooperative. It is a joint venture. And it is organized pursuant to a particular statute. Carlinville, we have no dispute as the facture on or no dispute as to the law. The only dispute in this case is the application of the law to those facts and the conclusion reached. Hence, this Court's review is de novo. The issue in this case, though, reaches far beyond the parties and far beyond the issue of potable water because it's going to impact the right of all non-home rule units across the state of Illinois to engage in these types of public-private partnerships on a myriad of issues. It's not just limited to this particular context. With that said, you will note Carlinville is a non-home rule municipality. Dorchester is a non-home rule municipality. Jersey County Rural Water is a not-for-profit corporation. It is a water cooperative. These three entities were in need. Carlinville has been in need of potable water supply and bulk supply for some time, and they had vetted this issue, explored various options. They entered in, made an application to the Department of Agriculture, received a grant, entered into a grant agreement to explore their options. They did so. There's a number of ways in which they could proceed, and they decided ultimately to proceed with the formation of Alluvial, being a not-for-profit corporation to this end. And they appointed one of their own, a member or representative, then Cindy Campbell, to represent them for that purpose. So Carlinville, Dorchester, and Jersey County Water came together and decided to form this not-for-profit corporation. They executed Articles of Incorporation. Now, the Articles of Incorporation are an agreement. They are a contract to bind these particular members to form an entity pursuant to the Illinois General Not-for-Profit Business Corporations Act. Those articles are a contract. They are an agreement with the state of Illinois to form this organization. The Articles of Incorporation are filed, and the members pass bylaws. Bylaws, likewise, are a contract. They are an agreement which governs the relationship between the members and the corporation, Alluvial, as well as the relationship among the members. And I've cited the Westlake Hospital v. Blix case for that proposition. That's an Illinois Supreme Court case recognizing that Articles of  Now, and then the entities, after Alluvial is formed, subsequently enter into prospective contingent water purchase contracts to purchase water from Alluvial in the event that the project is successfully financed, funded, constructed, and becomes operational. Now, with respect to these individual entities, again, there's no dispute on the law. Carlinville, being a non-home rule unit, has the authority under the Illinois Municipal Code to construct wells, to build water treatment facilities, to build a distribution system, and to secure public water supply, as does Dorchester. Jersey County, likewise, has authority under the Not-for-Profit Business Corporations Act to engage in the distribution of water on a residential mutual company cooperative basis. So all three members have the authority with respect to water supply, and Carlinville has very broad authority under the Municipal Code. Now, they also, in addition to that authority, have this provision of the Constitution, which is Section 10A of Article 7, that says that units of local government may contract and otherwise associate with individuals, associations, and corporations in any manner not prohibited by law or by ordinance. So Carlinville has the authority to associate with Dorchester, being another unit of local government, pursuant to the first sentence of Section 10A. It has the right to contract and otherwise associate with Jersey County Rural Water, pursuant to the second sentence of Section 10A. It has the authority to enter into a water purchase contract with alluvial, pursuant to the Illinois Municipal Code. So Carlinville has the authority to do everything it did in this particular case. And the argument has been that under Dillon's rule, that non-home rule units have only the authority that has been explicitly granted to them by statute, that the only means by which Carlinville can associate and cooperate are those statutorily prescribed in the statutes. And there are a few ways by forming a water commission, the formation of a water district. There are ways. Admittedly, there's no dispute that there are other ways to go about seeking a regional water supply. There is no dispute. There's no statute that prohibits them from forming a not-for-profit corporation. So there's no statute that says you can. There's no statute that specifically says you can't. What we have is the constitutional provision, when bootstrapped to the underlying authority over the subject matter, which says you have the right over the public water supply, you have the right to exercise that underlying right in concert and in collaboration with other units of local government, as well as private corporations. You can think of this, Your Honors, as a means of vertical integration by collaboration. Each of these entities, by coming together, has some control over their own destiny. They appoint a representative to the board. Each one has one vote. They have a say in how the project is financed, designed, constructed, how it operates, and what rate it charges. So by coming together, they're able to collectively maintain some control over their own water supply, as opposed to being captive of another municipality or perhaps even a for-profit corporation. In this particular instance, they chose the formation of a not-for-profit as the vehicle or means by which they chose to exercise their right to contract and otherwise associate. So we start with the clear language of the Constitution, which says that they may contract and otherwise associate with corporations in any manner not prohibited by law or by ordinance. There is no law or there is no ordinance which prohibits it. Therefore, we are entitled to a judgment in our favor as a matter of law. So we start with what I believe very clear language in the Constitution. We then move on to the case law. Now, prior to 1970 in the Constitution, Dillon's Rule prevailed in non-home rule units. It still has some application, but under the old Constitution, I've cited the case of El Sino versus City of Chicago, which is a 1929 case in the Supreme Court, which announces the general rule, which the court is probably familiar, that these entities are creatures of statute and they have to point out to a specific particular font of authority in a statute and that those statutes are strictly construed against them. All doubt is resolved against them. They're not to be liberally construed. The statutes are strictly construed. So that's where we started. Then we have the Constitution of 1970, which reshaped the landscape of local government. It created the concept of home rule units. It created the concept of intergovernmental cooperation because it recognized that many of these problems that these communities faced crossed political boundaries and required a collaborative approach and that no one entity acting alone had the horsepower to really address these things. And that's what gave rise to this particular provision of the Constitution. And the first case is the village of Elmwood versus the Forest Preserve District of Cook County, first case involving Section 10A. And the village wanted to build a ball field and property owned by the Forest Preserve District that was located within the municipality, and literally the Forest District didn't want to play ball. They said no. So the village sued them and said, you have to. And the court looked at Section 10A, and 10A was the purported basis for the cause of action. The court reviewed it and said, first of all in court, it said the Constitution, its well-established principle, the words used are to be given their plain and ordinary meaning. And that the word may means may. It doesn't mean shall. They don't have to do it. It's permissive. But then the court goes on to say, it says notwithstanding the construction of the clear language, we have examined the background of this provision and the intent of the drafters. And it looked to the report of the proceedings of the Sixth Constitutional Convention. It looked to the legislative history. And in so examining that, it says there is no support for the plan's construction of the provision. This provision was intended to remove the necessity under Dillon's rule of obtaining statutory authorization for each cooperative venture by unit of local government. So this is the first statement where a court says that we are flipping the script. We're abrogating Dillon's rule with respect to the right to collaborate. You still have to have authority over the underlying subject matter. But the means by which you exercise that authority is a constitutional grant. It is not dependent upon any specific statutory grant of authority. The case of Connolly versus Clark County is the case where Clark County was operating a gravel pit. They were selling gravel to other units of government, and they were sued by a private gravel pit owner challenging their authority to engage in this type of activity. And this is a case of the Fourth District. This court quoted the statute in the clear language. It then, despite the clear language, went on to examine the legislative history and the debates, the constitutional debates. It examined the report of the local governmental committee. It examined the comments made by Delegates Stahl and Weenum that the purpose of this was to allow units of local government by combining to perform specific services, develop economies of scale, cost reductions, and to avoid the creation of districts so that they could address these problems in an economical fashion. The report of the committee of local government at the time this was passed said the purpose of this proposed new section, and this is quoted by this court, the purpose of this section is to provide maximum flexibility to units of local government working out solutions to common problems. Not minimum flexibility, maximum flexibility. It goes on to say that, in addition, it will allow them to address common problems in concert with other units of local government at all levels in any manner not prohibited by law. Contractual relationships such as the sale of water will be constitutionally permitted instead of being dependent upon statutes. So, in other words, the right to do this is linked to the constitutional authority. It's not dependent upon statute. The court looked at the explanation of Section 10 and how it allowed units of local government to cooperate and it said that Dillon's rule of strictly construing legislative grants with governmental units has been abrogated in Article 7 of the 1970 Constitution when units of local government voluntarily cooperate. Now, this court, again, had cause to review Section 10 in the case of the village of Sherman versus village of Williamsville, which is cited in my brief. In that case, the parties had entered into a contractual arrangement whereby the city of Springfield was to provide water to a water commission formed by Sherman and Williamsville. Williamsville, Springfield was the exclusive supplier of water to the commission. The commission was the exclusive supplier of water to Williamsville. Williamsville bought all of its water from the commission and in turn, Sherman bought all of its water from Williamsville. They ran into a bottleneck whereby there was not sufficient storage capacity and the village of Williamsville imposed a moratorium on Sherman on constructing new mains. Sherman didn't like it and sued saying that this particular contractual arrangement was not authorized by the Illinois Municipal Code and therefore it was invalid. The court examined first the language of the Constitution that I previously referred to. It then examined, said that when discerning the purpose of the Constitution, the Supreme Court has attached great weight to the records of proceedings of the Constitutional Convention. It looked to the quotes and the excerpts from the Constitutional Convention, which I have included in my brief, regarding Delegate Stahl saying the purpose of this is, again, to permit smaller units of local government to combine, to achieve economies of scale, result in cost reductions, to reduce the need for special districts, and they said that you will notice the language is self-executing, which in essence means that it's there unless it's prohibited. It's a provision that says you can do it unless the General Assembly says you can't. It's an affirmative grant of authority. The negative presumption of Dillon's Rule does not apply. The court says Section 10 eliminated the effect of Dillon's Rule in construing intergovernmental agreements. Various courts have determined that Article 7 was intended to encourage cooperation amongst units of local government and to remove the necessity of obtaining statutory authorization, to remove the necessity of statutory authorization. That Section 10 has abrogated Dillon's Rule strictly construing legislative grants of authority, cites the Connolly case. And here's very important. In looking at the contract that Sherman said, this isn't authorized by law, and there was no question, but there was no statute that specifically authorized it. The court said no statutory authority was necessary to authorize this contract, and Sherman has cited no statutes that prohibit such a contract. Even if the contract was beyond the scope of agreements contemplated by the Code, the contract would have been a manifestation of the party's intent to exercise their constitutional rather than statutory powers. The Municipal Code would have limited the powers of the parties only if it contained an express prohibition, which it did not. Hence, this court upheld the agreement despite the fact that there was no express statutory authority for such arrangement. And the fact that it was a commission doesn't alter that result. That result was in the specific contract that was being challenged, and when one examines, that's the case law. We examine the legislative history behind Section 10A. Section 10A, on the first reading, the Constitutional Convention 1970, which appears in Volume 4 of the transcripts, the first reading, it only included the right of intergovernmental cooperation. It did not include the second sentence. It was only on the second reading that the second sentence involving the right to cooperate with corporations and private individuals was introduced. And the comments were made regarding the underlying purpose. The committee report indicated that as a means by which local governments may work together to provide services at the lowest possible cost, which is what a co-op is. Mr. Foreman, your time has expired, but you will have rebuttal. Thank you. Thank you. Mr. Smallhorn, please proceed. All right. May it please the Court, Jake Smallhorn, I'm the counsel for the appellees, the broxies. I actually agree with some of the opening statements that Mr. Foreman said. I do think the standard of review in this case is de novo. It's a summary judgment case where there were cross motions for summary judgment on legal issues. We agree regarding the underlying facts. I think there were some facts that weren't really discussed by Mr. Foreman, so I will point those out. But I think that the real issue here, there is a disagreement about the law in this regard and what the Illinois Constitution actually means and says. We're not arguing that there is a, that the court should apply a negative presumption regarding intergovernmental agreements. Our argument is more fundamental than that, and that's that there wasn't an intergovernmental agreement here. What's important for the court to note is that Alluvial, the company that was, the private not-for-profit company that was ultimately created, was created after Carlinville, the Carlinville City Council took a vote to grant one of its alder persons the authority to start appropriating funds to Alluvial. So the only real public vote that took place before Carlinville was created was a vote to appropriate loan funds which were applied for by the city of Carlinville, and that's in the record, if anybody needs me to point it out. Carlinville's on loan application and they're on the grant agreement. It's not Alluvial. Alluvial wasn't even in existence when Carlinville took the only public vote before the creation and initial funding of Alluvial. What we're arguing is not that there's some constitutional, I don't really think there's a constitutional problem here. I think the issue is that Section 10A, we're trying to use a tortured reading of it that you wouldn't even use in other contexts. I'm a city attorney for a small non-home rule municipality, Oakland, Illinois, not just north of my hometown, and we had an issue over creating city ordinances for criminal violations, and it's a pretty common understanding in that context that you can't do it if the law says you can't do it, if there's no affirmative grant of power for the non-home rule municipality to do that action. I can't create an ordinance that would allow the local police officer to write a city ordinance violation for invalid license and registration. They have to write a state ticket because that's within the state's jurisdiction. I think here it's pretty clear we're not there. It's been said multiple times that there's no law that prohibits Carlinville from doing what it did, which was joining with a private company, which is Jersey County Rural Water, and two other non-home rule municipalities to create alluvial. Carlinville, the entity that funded and took the initial actions to create alluvial, did that before alluvial was even created, so they weren't even agreeing the contract with the company that was in existence. The public didn't see the bylaws. They didn't see any contracts before the agreement appropriation occurred. It was just done wrong, and that's why I really strongly disagree with the assertion that the impact of the court's ruling in this case goes far beyond the issue of potable water. I don't think it even goes beyond the issue of potable water. All we're trying to ask the court to do and all we asked the trial court to do was to ensure that Carlinville, Jersey County Rural Water, Dorchester, that we follow the laws that are already in place. So my argument at the trial court level was the application of what we later termed the maxim... I always get nervous using Latin phrases, but it's the maxim that inclusion of several means the exclusion of those not enumerated. So I liken it to if I tell my 8-year-old son that he can have an apple on the counter, it doesn't mean that he can have a cookie from the cookie jar. It's a pretty simple concept that goes not just beyond parenting. It's a maximum statutory construction that is being applied several times in Illinois. In this case, there are several different ways that the Illinois legislature could have... that they gave Carlinville and the other entities at issue here go about solving the regional water problem. Mr. Foreman has admitted they didn't choose any of those remedies, any of those statutorily enumerated ways. Why isn't the Constitution sufficient authority? Because I don't think the Constitution gives them the right to do what they did under Article 10A, Your Honor. If it did, they wouldn't need statutory authority, would they? I agree that if it did, they wouldn't, but I think that reading it, reading Article 10A of the Constitution in the way that Mr. Foreman is suggesting would render Article 10... it would render 10A meaningless, Your Honor. If you disagree with your interpretation of Section 10A, do you lose? If you disagree with my interpretation or Judge Schroepfer's interpretation, I think so, yes. I agree with you about that. But I think also... What does that constitutional provision mean? And you claim that it doesn't authorize these municipalities to do what they did in this case? In this case, Your Honor, we're not saying they can't do what they did ever. We're saying the way they went about doing it in this particular case was wrong. It was wrong. And instead of fixing the problem, they continued going down the wrong road. I'm saying that it is pretty clear applying regular, well-settled principles of statutory construction that we don't even need to look at the minutes of the Constitutional Convention to see what the plain meaning of Section 10A is. There's two paragraphs here. Paragraph... I mean, there's two sentences in Section 10A that are at issue here. The first one says units of local government and school districts may contract or otherwise associate. So Judge Trumper's interpretation, which I think is correct, is that when units of local government are working amongst themselves, that they can either do a contract or they can find another way to go about doing it. However, when it talks about units of local government and what I guess I'll call non-governmental actors or entities, it says that there must be a contract and some other type of association. Why would they have those two different sentences in there written differently if they meant exactly the same thing? It just doesn't even make sense. And I think that it... Counsel, what kind of an association would one have outside of a contract? So I think that that would encompass, in this case, all the other legal ways that you can go about doing it. The legislature said, I think, it's seven or eight different ways you can fix your water problem. I mean, the municipal code even says you can contract with another municipality to do it. Nowhere is there any law that says you can just create a private company to fix your problem. You didn't answer Justice Turner's question. He referred to this business of association. What do you think that means? I think it means that they would, I think in this context, when we're referring to, referring to non-governmental actors, you have to use a process that is authorized by the law, meaning they would have had to pick among the numerous statutorily enumerated ways to fix their water problem. But that requirement was inadvertently left out of the constitutional sentence? It's not. It says that they must both contract and otherwise associate. The way I interpret it... You can't associate. That's not good enough. You have to contract and otherwise associate? Yes. That's what the plain language of the constitutional provision says, Your Honor. I mean, it's what it says right there. And I think it makes sense when you consider why would you want to do that. I apologize. In my view of this, I think that they're creating a somewhat higher bar for municipalities that want to engage activity with private entities that don't have the same level of disclosure and transparency as a public entity. Again, looking at it from the standpoint of an attorney that represents a municipality, when you enter into a contract, when you have an intergovernmental agreement, it goes before the board for consideration. So what they're trying to do, and what it seems pretty evident to me, is that the framers were intending to require a little bit more when there's a private association. Well, I don't know how you can have that in a contract. There's a contract with an individual, but you're saying there's some kind of an association outside the provisions of the contract? I think yes. There has to be something. And I'm sorry, did I interrupt you, Judge? Well, what if this additional association, whatever it might be, is prohibited by the contract? The provisions of the contract. Are you asking, Your Honor, what if you entered into a contract that prohibited an association? No. Can you do it anyways? I'm asking if you've already got a contract with an individual, what other type of an association could you have, and why would it not be governed by the provisions of the contract you already have? I'm not suggesting that they have to do that. So I think I understand your question now, Judge, and I apologize. There are many authorized methods. Okay, we'll take water provision contracts, for example. The municipal code expressly authorizes a municipality to contract with a private company, so you don't even have to fall back to the Constitution in that instance. There's a statute that directly allows it. I think this is what I would call a fallback provision. It's the one where there is no other statute that would apply. So in this instance, I think it's important to point out, and what I think is very different than in a lot of other circumstances around the state, is that there was no contract with Alluvial, and there was no association with Alluvial prior to the Carlinville board authorizing the funding. There were bylaws, and there were articles of incorporation, but those happened after they took the only vote that went before the citizens of Carlinville. So there was neither of those. I'm sorry? If it had happened before, would that be okay? I think if it had happened before, and they had presented it to the board, it might be a very different story, but that did not happen. My question is, would it be okay then? I think it would have been okay if they did it before, and it was presented to the members of the public for review and comment and vote at an open meeting of the Carlinville City Council. So yes. But that's what I want to point out here. That didn't happen. There was zero transparency in this particular case. We're not trying to argue that the court should enter a ruling that voids every private association in Illinois. That's not what we're suggesting at all. We're merely suggesting that the way it happened here was wrong. And instead of fixing what could have been a simple mistake two years ago, we continue to double down with this. Your argument seems to be that the procedure specified in section 10A wasn't followed. The difficulty is there's no procedure specified in section 10A, is there? No, there is no procedure specified in section 10A. So you're asking us to infer it and to conclude that the procedures that were utilized here violated the Constitution, even though the Constitution assignment on the subject. I don't think I'm asking you to infer anything, Judge Steinman. So we're relying on the second sentence of 10A. Were you saying the procedures Carlin will follow in this case were wrong because what they did should have occurred before the association, not afterwards? My question is where does that requirement appear in the constitutional language? It doesn't appear in the Constitution. It's just the requirements of the municipality. You're asking us to infer it and to hold that the absence of doing it before constitutes a constitutional violation? No, Your Honor. What I'm asking the court to do is to accept the agreed facts, which were prior to the Carlinville City Council taking a vote, there were no contracts presented. There was no association because Carlinville could not associate with a So I'm just saying that if you read the second sentence of Section 10A, there was no contract and there was no association when the city of Carlinville took the only vote to start pumping money into alluvial and to start participating in it. And I think it's simple. So I'm not asking the court to infer anything. Those are just the facts of the case. And you can interpret that based on the plain language. So even if we were to say that they may, so they have the discretionary power to contract and associate, they didn't have a contract and they didn't have an association. So there's no need for inference or procedure there. They could have chosen a way under, which again, is under the numerous statutorily enumerated ways to fix a water problem. And they have plenty of procedures. Instead they chose to rely on this and they did neither before taking the vote to start the creation and funding of Illinois Alluvial. So I'm not asking the court to enter some sweeping order that would invalidate or make, you know, void numerous entities. I'm asking the court to focus on what happened here. And, and, and the, in the trial judges opinion that it wasn't done in accordance with the statute. And the, in the, in the two very minimal requirements under section 10, eight of the constitution. I think if, if Alluvial had presented any evidence or if Carlinville had presented any evidence at trial, that there was a contract or some type of association. And I agree. It's kind of a nebulous term with Alluvial before they took the only vote. This would be a very different story, but they don't get to choose the facts. I think I have a minute yet. I would yield the balance of my time unless the court had any further questions. I see no further questions. Thank you for your argument. Mr. Foreman, do you have any rebuttal? Yes, your honor. The, what the plaintiff is asking is that the court essentially shoehorned the word before somewhere in section 10, a and take a red pin to the second section of 10 a and render it meaningless and superfluous. Nowhere does it, that section 10 a say anything about having to enter into a contract before as your honor pointed out, there's no procedure there. Moreover, we keep saying there's only one vote. There's no contract. Yes, there is a contract. That's what the articles of incorporation are. They are a contract. And that's what the Blix case that I cited in my brief says the bylaws are a contract. Those are contracts that govern the association. The association is not between Carlinville and Alluvial. The association is between Carlinville Dorchester in Jersey County, rural water. That they associate and their means of associating is through the creation of this not-for-profit entity. And there are contracts. I agree with your honor that you don't have to have contracts and an association. That whole analysis is another issue, but in this case, it's irrelevant because we do have contracts. We have bylaws, we have articles. You don't contract to enter into a contract. You don't have a contract that says we're going to form a corporation. You form the corporation. That's what the articles do. That's what brings it into existence. There's no requirement anywhere that says you have to do this before to the point that they have one vote. They appointed one representative to represent them for purposes of forming the corporation. They appointed a council member to be present, to represent them in corporation in passing. Then they also voted to enter into a water purchase contract with Alluvial at an open meeting. The bylaws require that you do so. If you do, if you reject that contract, it's tantamount to withdrawal of membership. The prelude to all this was all discussed in open meetings. The report was given in open meetings. The notion that this is somehow some backroom deal is not. This is a means to public participation because they have a seat at the table. They have a right to participate. They have a vote with the Alluvial board. They send a member to those board meetings who reports back to them in open meetings. They have a vote. If you enter into a contract with Illinois American Water, you get to vote on that contract. You don't get to go to their board meetings or look at their books. So this notion of public transparency, there is a failure of analysis. It's the association amongst the members that we are talking about here today. And the, what they're asking is that the constitution be rewritten to say that you can, you can contract and associate with corporations in only the manners authorized by law. Constitution says in any manner, not prohibited by law. And that was the specific subject of the Mathias Martin amendment, which is referred to in my brief, which the legislative history goes through on the second reading where they added the second sentence of section a Mr. Mathias said, in other words, units of local government will contract and associate with corporations in any manner, not prohibited by law. This is the same authority they have with respect to intergovernmental cooperation. It's the same as the first sentence. This means that they can go ahead unless it's prohibited. He speaks specifically of organizations that make proposals to non-home rule units. Now this would permit those non-home rule units to go ahead and make a contract. And unless it's in an area that has been prohibited by law, this would permit non-home rule units to go ahead and make that sort of contract.   units of local government will contract and associate with corporations in any    units of local government will contract and associate with corporations in any manner, not prohibited by law. The Mathias Martin amendment address the very issue that they have raised in this. And, and the goalposts seem to be moving, but the trial courts decision essentially says you can only do this. If the legislature says this is a statutorily prescribed prescribed path, that's what their complaint says. Now they're making a different argument. The stat, the constitution says you can do it in any manner. It's your choice. It doesn't have any requirement that you do this before. Any means any, it doesn't mean only not prohibited does not mean authorized. They have flipped the script on this and returned us to the constitution of 1870 and essentially rewritten the constitution by construction to strike the right of local governmental entities to cooperate in public private partnerships. Thank you. You're out of time. Thanks both attorneys for your arguments. The case is submitted and we now stand in recess.